UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DIANA CURRY,

    Plaintiff,

v.

TRI-STATE MEMORIAL HOSPITAL,

    Defendant.

NO. 14-CV-00336-JLQ

MEMORANDUM OPINION AND ORDER RE: MOTION FOR SUMMARY JUDGMENT; ORDER SETTING PRETRIAL AND TRIAL DATES

## I. Introduction

BEFORE THE COURT is the Defendant's Motion for Summary Judgment (ECF No. 53), filed on November 21, 2016, seeking dismissal of all claims against Defendant in the Amended Complaint (ECF No. 22). On December 12, 2016, Plaintiff filed a Response (ECF No. 58) asserting genuine issues of fact exist precluding summary judgment. On December 23, 2016, Defendant filed a Reply (ECF No. 59) and Errata (ECF No. 62). Oral argument was heard telephonically on January 10, 2017. Plaintiff was represented by Matthew Menzer. Defendant was represented by Stephen Lamberson and Andrew Wagley. This Order memorializes and supplements the court's oral rulings.

## II. Background and Procedural History

In summary judgment proceedings, the facts are viewed in a light most favorable to the non-moving party, in this matter the Plaintiff.

ORDER - 1

On January 11, 2012, the Plaintiff, Diana Curry, underwent total knee replacement surgery at Defendant Tri-State Memorial Hospital. (ECF No. 53-3 at 6). The surgery was performed by Dr. Bryan Beardsley. (ECF No. 53-3 at 6).

On the morning of January 12, 2012, Physical Therapist Christopher Lee performed routine physical therapy on Plaintiff related to her knee replacement surgery. *See* (ECF No. 53-3 at 25-28). Lee is employed by S.P.O.R.T. Physical Therapy, which is an independent contractor of Defendant Hospital. (ECF No. 53-3 at 23-24). Lee stated in his deposition he left Plaintiff in a chair at the conclusion of her session and left her room around 7:45 a.m. to enter the patient note at the medical surgical desk. (ECF No. 53-3 at 28-29). Registered Nurse Jackie Robinson entered a chart note at 9:05 a.m. reflecting Plaintiff being "up to chair with Physical Therapy" as of 9:01 a.m. (ECF No. 53-3 at 45, 50).

Plaintiff's daughter, Samantha Bonnelle, was present with Plaintiff at the hospital and testified Plaintiff was returned to her bed at the conclusion of the physical therapy session. (ECF No. 58-1 at 31-32). Bonnelle testified a nurse called "Geni" later put Plaintiff into the chair and proceeded to give her a "bird bath." (ECF No. 58-1 at 33-35). Bonnelle described "Geni" as "Caucasian. Dirty blond hair... in a pony tail." (ECF No. 58-1 at 34).

At 10:56 a.m., Nurse Robinson entered a patient note indicating Plaintiff fell out of her chair at 9:45 a.m. while "cleaning up when her socks slipped." (ECF No. 58-1 at 18). The Certified Nursing Assistant reported this to Nurse Robinson who checked on Plaintiff at 10:53 a.m. (ECF No. 58-1 at 18). Lee was working with other patients, but received word that Plaintiff had fallen. (ECF No. 53-3 at 29). He had not had contact with Plaintiff since leaving her room earlier in the morning. (ECF No. 53-3 at 29). After Plaintiff's fall, she was diagnosed with a torn rotator cuff. (ECF No. 58-2 at ¶9).

On February 29, 2012, Dr. Beardsley performed right shoulder surgery on Plaintiff to repair her torn rotator cuff. (ECF No. 53-3 at 11). Plaintiff has subsequently undergone two other surgical and replacement procedures on her shoulder. (ECF No. 58-2 at ¶12).

On October 14, 2014, Plaintiff filed the Complaint in this matter against Tri-State Memorial Hospital, alleging claims of medical negligence and negligence in supervising employees against Tri-State Memorial Hospital. (ECF No. 1). On September 9, 2015, Plaintiff filed the Amended Complaint adding two parties, S.P.O.R.T. Physical Therapy Clinic, PLLC, and Tri-State S.P.O.R.T. Physical Therapy Clinic, LLC. (ECF No. 22). Claims against those parties were voluntarily dismissed on December 22, 2015, (ECF No. 35) and October 19, 2016 (ECF No. 50).

In the Motion for Summary Judgment, Defendant Hospital argued Plaintiff's claims should be dismissed because: (1) there is no dispute Lee, not an employee of the Defendant Hospital, placed Plaintiff into the chair immediately prior to her fall; and (2) there is no dispute her shoulder injury was preexisting and not caused by her fall. *See* (ECF No. 53 at 3). Plaintiff argued those facts are disputed because: (1) Plaintiff's daughter stated it was a nurse who placed Plaintiff into the chair immediately prior to her fall, long after the physical therapy appointment; and (2) Plaintiff's retained expert witness opined the fall was the proximate cause of her rotator cuff tear, and if there was a preexisting injury, it was minor and was greatly aggravated by the fall. (ECF No. 58 at 2). In its Reply, Defendant Hospital argued: (1) Plaintiff's daughter's testimony is inconsistent and only raises "a scintilla" of evidence; and (2) Plaintiff's expert should be disregarded because his opinion was based in part on the opinion of a nurse. (ECF No. 62 at 3-7).

### III. Discussion

**A.  Summary Judgment Standard**

ORDER - 3

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party has the burden of proof at trial, the moving party need only point out there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with specific facts showing there is a genuine issue for trial. (*Id.*).

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations and quotations omitted).

When the plaintiff is claiming medical negligence in the failure of a health care provider to follow the accepted standard of care, they must prove: (1) "[t]he health care

ORDER - 4

provider failed to exercise that degree of care, skill, and learning expected of a reasonable prudent health care provider at that time in the profession or class to which he or she belongs"; and (2) "[s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040.

**B.     Plaintiff's Fall**

Defendant Hospital asserted Lee placed Plaintiff in the chair immediately prior to her fall and summary judgment is appropriate because Lee was not an employee of the Defendant Hospital. (ECF No. 53 at 6). Plaintiff argued a nurse employed by Defendant Hospital placed Plaintiff in the chair before she fell. (ECF No. 58 at 11).

A "health care provider" is defined to include "[a] person licensed by this state to provide health care or related services including... a physician... nurse... [or] physical therapist." RCW 7.70.020(1). The definition also applies to "[a]n employee or agent" of a health care provider. RCW 7.70.020(2). Unlike employees, an employer is not generally liable for the acts of an independent contractor. *Wilcox v. Basehore*, 189 Wn. App. 63, 96 (2015). Thus, the identity and status of the person who put Plaintiff into the chair is a central issue as is the standard of care required of the Defendant Hospital, an issue not now before the court.

Lee testified he put Plaintiff in the chair at 7:45 a.m., left the room to write his note from the session and see other patients. (ECF No. 53-3 at 28). Lee did not go back to Plaintiff's room and was unaware of what was going on in her room after he left. (ECF No. 53-3 at 29).

Bonnelle testified the physical therapist put Plaintiff in her bed before leaving. (ECF No. 58-1 at 32). She testified a nurse named "Geni" later put Plaintiff in the chair to "bird bath" the Plaintiff. (ECF No. 58-1 at 33-35). According to Bonnelle, Plaintiff fell after the nurse put Plaintiff in the chair. (ECF No. 58-1 at 35).

ORDER - 5

The excerpts filed from the deposition of Nurse Practitioner Geni Evans do not include any testimony regarding placing Plaintiff in the chair, and it is unclear if she is the same "Geni" Bonnelle referred to. *See* (ECF No. 58-3 at 76-79). Nurse Robinson testified a note she entered indicates physical therapy put Plaintiff in the chair as of 9:01 a.m. (ECF No. 53-1 at 45). However, Nurse Robinson was not aware of how long Plaintiff had been sitting in the chair prior to falling. (ECF No. 53-1 at 45).

Defendant Hospital argued the only conclusion from the evidence is Lee placed Plaintiff in the chair prior to her falling, and as he is an independent contractor, the Defendant Hospital is not liable for Plaintiff's injuries. Defendant Hospital asks the court to discount the testimony of Plaintiff's daughter who said the nurse placed Plaintiff into the chair long after Lee left. Defendant Hospital characterized Bonnelle's testimony as "riddled with inaccuracies" and asserted she was "clearly confused and speculating as to who placed her mother in the chair." (ECF No. 62 at 3-4). Defendant Hospital is asking the court to weigh Bonnelle's testimony and make credibility findings. This is inappropriate in summary judgment proceedings. The inconsistencies between witnesses' testimony demonstrates disputed facts which must be resolved by the trier of fact. Because there is a genuine dispute as to who placed Plaintiff in the chair immediately prior to her fall, summary judgment is inappropriate.

**C.     Causation**

"Expert medical testimony is generally required to establish the standard of care and to prove causation in a medical negligence action." *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 492 (2008); *see McLaughlin v. Cooke*, 112 Wn.2d 829, 836-37 (1989) ("Expert testimony is necessary to prove whether a particular practice is reasonably prudent under the applicable standard of care" and "on the issue of proximate cause ... in medical malpractice cases"). To defeat summary judgment, the plaintiff "must produce competent medical expert testimony establishing that the injury complained of was proximately

ORDER - 6

caused by a failure to comply with the applicable standard of care." *Davies*, 144 Wn. App. at 492-93.

A plaintiff may recover damages for the aggravation of a pre-existing condition, whether it was an active condition causing pain or disability, or a latent condition. *See* Wash. Pattern Instruction 30.17 & 30.18; *Thogerson v. Heiner*, 66 Wn. App. 466, 474 (1992). A medical negligence claim is not foreclosed because the injury existed prior to the alleged negligence, provided the negligence aggravated the injury.

As an initial matter, the parties submitted no evidence regarding the applicable standard of care with their briefs on the Motion for Summary Judgment. During oral argument, counsel stated that decision was intentional and Defendant Hospital was not placing the standard of care at issue in its Motion for Summary Judgment. Expert testimony is necessary to show the hospital employee was negligent, however, Defendant Hospital has not put this issue forward in its summary judgment motion. The court makes no determination regarding the applicable standard of care.

Regarding the issue of proximate cause, when repairing Plaintiff's rotator cuff, Dr. Beardsley noted the tear was large with "extensive subacromial bursitis" with apparent calcium deposits in the tissue. (ECF No. 53-3 at 12). Dr. Beardsley testified his chart notes stated the tear looked "chronic," meaning the tear had scarred and been present for longer than 48 days. (ECF No. 53-3 at 11). At some point in time, Dr. Beardsley reviewed an MRI of Plaintiff's shoulder taken on January 31, 2012. (ECF No. 53-3 at 10). The MRI showed muscle atrophy present, which takes "usually at least three to six months" to develop from non-use of the muscle. (ECF No. 53-3 at 10). Dr. Beardsley opined it is "unlikely" "that a tear of that size that was scarred that way had just happened less than two months prior." (ECF No. 53-3 at 13).

Plaintiff presented the declaration and expert reports of Dr. Patrick Bays, a board-certified orthopedic surgeon. *See* (ECF No. 58-2). Dr. Bays reviewed the deposition

testimony of Dr. Beardsley, Nurse Practitioner Evans, and Plaintiff's medical records. (ECF No. 58-2 at ¶8). Dr. Bays acknowledged the existence of "some evidence" in Plaintiff's records "that would support a finding that Ms. Curry had degenerative changes in her right shoulder predating her fall, including possibly a small rotator cuff tear." (ECF No. 58-2 at ¶11). However, Dr. Bays opined if the tear existed prior to the fall, the fall "aggravated that small tear and/or caused the massive, full-thickness tear that was diagnosed after the fall and which has since required extensive medical treatment." (ECF No. 58-2 at ¶11).

Defendant Hospital argued the court should not consider Dr. Bays' opinions because he relied on the deposition testimony of Nurse Evans. (ECF No. 62 at 7). Nurse Evans testified she did not believe Plaintiff had a torn rotator cuff prior to the fall. (ECF No. 58-1 at 72, 77). Because Nurse Evans is not a medical doctor or orthopedic surgeon, Defendant Hospital asserted any opinions she expressed regarding causation are legally insufficient. (ECF No. 62 at 7); *see Colwell v. Holy Family Hosp.*, 104 Wn. App. 606, 612-13 (2001) (holding a nurse cannot provide opinions of causation as "a medical doctor must still generally connect" causation to the alleged negligence).

Defendant Hospital's argument misses the mark. Dr. Bays made his own opinion based on his review of the medical records and deposition testimony of individuals including Nurse Practitioner Evans. *See* (ECF No. 58-2 at 49-50, 71-72). The rebuttal report Defendant Hospital focused on was made to rebut the opinions of Defendant Hospital's experts who apparently relied on the same deposition testimony in reaching their conclusions. *See* (ECF No. 58-2 at 71-72). Dr. Bays made his independent opinion after reviewing the findings of Nurse Evans and other evidence. Defendant Hospital is again attacking the weight or credibility to be given to evidence, which is not the court's role in summary judgment proceedings. Accordingly, there exist genuine issues of fact regarding causation and summary judgment is Denied.

## IV. Conclusion

There are undeniable questions of fact in this matter which cannot be resolved on summary judgment. The weight or credibility of evidence are matters for the trier of fact to decide. For all of the foregoing reasons, Defendant's Motion for Summary Judgment is Denied.

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 53) is **DENIED**.
2. The Pretrial Conference set for **March 22, 2017, at 9:00 a.m.** shall now be heard **telephonically**. The court will hear argument on Motions in Limine at this telephonic Pretrial Conference.
3. The Final Pretrial Conference in this matter will be held on **Tuesday, April 4, 2017, at 8:30 a.m.** in Spokane, Washington.
4. The jury trial shall commence on **Monday, May 8, 2017, at 9:00 a.m.** in Spokane, Washington.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel.

Dated January 11, 2017.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
